W. S. GREEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43786, 46373, 63487. Promulgated September 21, 1932.

*Walter Bolinger, Esq.*, for the petitioner.
*Harold Noneman, Esq.*, for the respondent.

#### OPINION.

ARUNDELL: The respondent has determined deficiencies of $4,800.08, $3,194.99, $1,798.39 and $436.81 in income taxes for the respective years 1925, 1926, 1927 and 1929.

In granting a lease on certain land the petitioner retained a 3/32 oil royalty and also contracted with the lessee to receive one-third of the net profits derived from operations under the lease. The issue is whether the petitioner is entitled to percentage depletion on the amounts received as his share of the net profits in addition to allowances made for depletion on his royalty income. The facts were stipulated. The stipulation of facts is incorporated herein by reference.

As far as material here it appears that petitioner and one Sanborn in 1910 acquired jointly the fee simple title to a one-acre tract of land in Louisiana. Petitioner owned a three-fourths undivided interest in the land, and Sanborn owned the remaining fourth. In May, 1921, Sanborn leased his interest to petitioner, retaining a 1/32 royalty. There had been a mesne lease to a concern known as the Gum Cove Oil Company, but that had terminated by reason of nonoperation of the property by the lessee. On May 25, 1921, petitioner leased his three-fourths interest in the property to J. E. Ratliff for a 3/32 royalty and by the same instrument assigned his interest under the Sanborn lease to lessee Ratliff, who assumed payment of the 1/32 royalty to Sanborn. On May 28, 1921, petitioner entered into another contract with lessee Ratliff and with L. Siess, who was interested with Ratliff in the lease, which contract, after reciting the fact of the lease to Ratliff, the acquisition by Siess of an interest, and that it was understood that petitioner was to receive additional consideration for the lease, provided as follows:

After deducting from the oil or other mineral produced from the said land under said leases, a sum sufficient to reimburse first parties [Ratliff and Siess] for the costs of drilling, cleaning out and equipping and operating wells

on said land, and after payment from said funds of the attorney's fees above provided for, said second party [petitioner] in addition to the royalties provided for in said leases shall be paid and own a one-third part of the net profits of said business or of any sale thereof.

Other provisions of the contract dealing with the acquisition of certain property of the prior lessee and the payment of attorney fees are immaterial to these proceedings.

Ratliff, Siess, and another individual formed a syndicate for the operation of the property. This concern, known as the L. Siess Oil Syndicate, was later incorporated under the name of " L. Siess Oil Syndicate, Incorporated." The two will be referred to herein indiscriminately as " the syndicate," or " the lessee." Shortly after June 6, 1921, the syndicate commenced operations on the property and thereafter through the year 1929 it carried on operations continuously. During that period the lease and contract entered into in May, 1921, remained in full force and effect.

Under the contract of May 28, 1921, the syndicate paid over to petitioner monthly certain sums (the amounts are stipulated) as representing one-third of the profits realized from its operations. In computing the amounts so paid, the syndicate deducted, from the gross revenues realized from the sale of seven-eighths of the oil produced, all sums expended or expenses incurred by it in the actual development and operation of the property, including all capital expenditures incurred in the drilling of new wells and the purchase of machinery, tools and other equipment, but excluding depreciation of the physical properties used in developing and operating said property, and depletion of the mineral reserves.

In the several taxable years the respondent allowed petitioner deductions for depletion on his 3/32 royalty interest, but allowed no deductions on account of his interest in the profits of the syndicate.

The respondent has allowed a deduction in each year to the syndicate in an amount equal to 50 per cent of the net income from its seven-eighths working interest in the lease. In computing the net income he included in the deductions from gross income the sums paid to petitioner as representing his one-third of the net profits as provided for by the contract. Depletion deductions computed at the rate of 27½ per cent of the gross income from the seven-eighths working interest, without deduction for the sums paid to petitioner, exceeded the amounts computed at 50 per cent of net income. As stated above, the respondent has refused to allow petitioner to take deductions for depletion based on his share of the net profits of the syndicate from the operation of the leased property. Counsel for respondent argues that the petitioner's contractual right to one-third

of the net income of the operating lessee is something too remote to be considered a part of his "gross income from the property" upon which depletion deductions are based under the Revenue Acts of 1926 and 1928.

The applicable provisions of the revenue acts, section 204(c) (2) of the Revenue Act of 1926 and section 114(b) (3) of the 1928 Act, are identical and provide as follows:

In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property * * *.

It has been decided that a cash bonus, in addition to royalty from the sale of oil and gas, is income from the property within the meaning of the Revenue Act of 1921, which allowed depletion on the discovery basis with a limitation that the allowance should not exceed the "net income, computed without allowance for depletion, from the property." *Samuel Kraemer*, 25 B. T. A. 686. In that case we quoted from *Work* v. *Mosier*, 261 U. S. 352, in which it was held that a bonus received from auctioning leases was "income from the use of the mineral resources of the land." We see no difference in substance between the payments to which petitioner became entitled as his share of the syndicate profits from the operation of the leased property and a cash bonus paid by a lessee. The provision in the contract that the payment was to be a percentage of the lessee's income was nothing more than a means of determining the amount of the bonus. We accordingly hold that the amounts paid by the lessee to petitioner as his share of profits constituted income from the property upon which he is entitled to percentage depletion.

Under petitioner's contract with the lessee the amount he was to receive in addition to the royalty was limited to a share of the profits from the operation of the property owned by him and Sanborn, and the figures stipulated by the parties upon which their respective computations are based are likewise limited to income from that property. Consequently we have no occasion to decide whether the result might be different if the lessee's income were derived from sources other than the operation of the leased property, as suggested by counsel for the respondent.

*Decision will be entered under Rule 50.*